536 P.2d 215

Melvin NELSON, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Harkers Auto Repair, Respondent Employer,

Sentry Insurance Company, Respondent Carrier.

No. 1 CA–IC 1115.

Court of Appeals of Arizona, Division 1, Department C.

June 5, 1975.

Jerome & Gibson, P. C., by D. A. Jerome, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca, by Merton E. Marks, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

The issue presented on this review of an Industrial Commission award is whether petitioner's Raynaud's Disease was causally related to his employment. The Commission found it was not. We agree with that determination.

Petitioner, Melvin Nelson (Nelson), had worked as a mechanic for twenty-three years before starting work with Harkers Auto Repair (Harkers) on March 30, 1973. On April 27, 1973, Nelson punctured his right wrist during the course of his employment as a mechanic for Harkers. On May 2, Nelson saw Dr. Paul Allison, a general practitioner, who treated the wound which had become infected. Dr. Allison continued to treat petitioner periodically through May, and last saw him on May 22, at which time he felt Nelson needed no further treatment.

On May 23, Nelson went to Dr. Stepan Gulesserian, a general practitioner, complaining of pain and coldness in his left thumb. Dr. Gulesserian referred Nelson to Dr. Enrique Scappatura, a specialist in thoracic surgery who initially saw Nelson

on May 25. Dr. Scappartura diagnosed Nelson's complaints as Raynaud's Disease and recommended that he undergo a cervical sympathectomy on his left side, which he did. In December 1966, the same surgery for Raynaud's Disease was performed on Nelson's right side. According to Dr. Max Taylor, M.D., Nelson's attending physician in 1966, the results of the surgery on the right side had been excellent, and Nelson was able to return to his work as a mechanic.

Petitioner's claim for workmen's compensation benefits was denied by the respondent insurance carrier. In protest, a hearing was held, resulting in an award on October 10, 1973, granting benefits to Nelson for the right wrist injury, but addditionally finding that Nelson's Raynaud's Disease was not aggravated or otherwise affected by his employment. On review, the award was affirmed by the Commission, and Nelson thereafter filed a petition for writ of certiorari with this Court.

Though there is some indication to the contrary in Nelson's brief, it appears that he is not contending that the right wrist injury of April 27, was an aggravating factor of his disease. If this is erroneous on our part, suffice it to say that Dr. Scappatura testified unequivocally that there was no causal connection between the two.

Nelson does contend that the medical evidence established legal causation between his employment and the disease. He relies principally upon the testimony of Dr. Scappatura. Respondents assert that Dr. Scappatura's testimony was correctly interpreted by the hearing officer's finding that the doctor was unable to say that Nelson's employment was a precipitating factor of his condition.

■ Under the theory of legal causation, an employer takes his employee as he is, and if an employment related work accident aggravates a preexisting bodily condition, producing a further injurious result, the result of such aggravation is compensable. *See* State Compensation Fund v. Keefe, 22 Ariz.App. 311, 526 P.2d 1266

(1974); Royal-Globe Ins. Co. v. Industrial Commission, 15 Ariz.App. 242, 488 P.2d 178 (1971). It does not have to be shown that the work related accident was the sole cause of such aggravation; rather, it is sufficient if it can be shown to a reasonable medical probability that it was a producing cause. *See* Caganich v. Industrial Commission, 108 Ariz. 580, 503 P.2d 801 (1972); Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960).

With the foregoing principles in mind, we have reviewed the medical record. Dr. Scappatura explained that Raynaud's Disease is a disease affecting the vascular system, and is subject to periods of remission and exacerbation. He stated that the cause of the disease is unknown, but that there are certain predisposing or aggravating factors. According to his testimony, Raynaud's Disease has been described as a disease affecting people that use their hands a lot; that the use of vibrating tools by, for example, mechanics, would be an aggravating factor. Specifically, Dr. Scappatura stated that he would relate Nelson's use of vibrating tools as a mechanic with the fact Nelson's disease was symptomatic when he saw him. However, Dr. Scappatura's testimony additionally reflects that Nelson's Raynaud's Disease may well have been symptomatic on the left side when he started work for Harkers. Dr. Scappatura testified that he received from Nelson a history since 1967 of recurrent episodes of pain in the left arm, some coldness and some definite trophic changes of the left thumb. According to Dr. Scappatura, Nelson's condition had been getting progressively worse. Petitioner testified on the other hand, that he had had no problems with his left side from 1967 to the April 1973 industrial episode.

In regard to whether Nelson's work activity for Harkers was a precipitating cause of Nelson's Raynaud's Disease, Dr. Scappatura testified as follows:

"Q. Well, Doctor, just a couple of last questions. If he was having progressively worsening symptoms of

his Raynaud's Disease for several years prior to the time that you saw him, which was May 25, 1973—

"A. That's right, 5–25.

"Q. —and if he worked for my client from March 30, 1973—I believe it was some time in May of 1973—you cannot state with reasonable medical probability that his working for my client was the cause or a contributing factor to the symptomatic Raynaud's Disease when you saw him as opposed to the natural progression of the disease, can you?

"A. No, I cannot for the simple fact that sometimes the disease stays at one stage for a longer period of time, for years, and some other time because of occupational problems, occupational disability or—occupational problems, the disease becomes symptomatic, so I don't know, you know, if because of the occupation this produced the symptoms."

Later, Dr. Scappatura testified:

"A. Well, again, as I stated, I think that the use of vibrating tools, it is definitely a precipitating factor on the Raynaud's Disease. And the Raynaud's Disease again is a long process, so if at any stage of the evolution of the disease the patient gets in contact with use of vibrating tools or using their hands more often than he has been doing it before, I would think that that is definitely a consideration in the cause or worsening of his previous condition."

■ There is no evidence in the record that Nelson used his hands or vibrating tools more during his employment with Harkers than he had in the previous twenty-three years. The testimony of Dr. Scappatura does not compel us to the conclusion that Nelson's use of such tools while in the employ of Harkers either precipitated the symptoms of his disease, or caused them to become worse.

In addition, the record indicates that Nelson's symptoms may well have arisen from his smoking. Both Dr. Scappatura and Dr. Charles Rucker, a specialist in thoracic surgery who examined Nelson in July of 1973, stated that smoking was an aggravating factor of Raynaud's Disease. According to Dr. Scappatura, Nelson was smoking at times two packs of cigarettes a day. Both doctors were of the opinion that the use of vibrating tools would be more of an aggravating factor than smoking. However, the weight of this opinion, was, we believe, substantially undercut by the following testimony of Dr. Rucker:

"A. *I don't think there's any experimental evidence that indicates that one is a more prominantly* [sic] *precipitating cause than the other.* My own personal opinion would be the use of a vibrating machine would probably be more of a—a stronger precipitating factor than smoking, but they're both very strong precipitating factors." (Emphasis added).

The likelihood that smoking may have been the precipitating cause of Nelson's symptoms is further supported by the time when Nelson first voiced complaint of the disease on his left side. Nelson testified that his symptoms began May 4, two days after seeing Dr. Allison. He stated that he told Dr. Allison of his symptoms, but that the doctor in effect ignored it. Dr. Allison testified on the other hand, that Nelson never complained to him of any problems with his left hand. The evidence is thus in conflict on this point. Accepting as true the testimony of Dr. Allison, Nelson didn't voice any complaints of his disease until he saw Dr. Gulesserian on May 23, approximately one month after the industrial episode. The significance of this time period is revealed by the testimony of Dr. Rucker. A hypothetical question was posed to Dr. Rucker that assuming Nelson was using vibrating tools of sufficient volume and duration to precipitate Raynaud's Disease, would these symptoms manifest themselves within a twenty to thirty day

period. Dr. Rucker stated that they would in his opinion. Accordingly, using Dr. Rucker's testimony as a benchmark, this would place the manifestation of petitioner's symptoms borderline or later than they would be expected if work connected.

In reviewing the sufficiency of the evidence to support a Commission's award, the reviewing court does not weigh the evidence but considers it in a light most favorable to sustaining the award. Pike v. Industrial Commission, 20 Ariz. App. 76, 510 P.2d 387 (1973). Where the evidence is in conflict, the Commission is at liberty to determine which testimony is more probably correct. Martin v. Industrial Commission, 20 Ariz.App. 376, 513 P.2d 383 (1973). If the findings and award of the Commission are reasonably supported by the evidence, they will be sustained. Valdon v. Industrial Commission, 103 Ariz. 547, 447 P.2d 239 (1968). Upon reviewing the record, we find the evidence reasonably supports the Commission's findings.

The award is affirmed.

NELSON, P. J., and STEVENS, J., concurring.