566 P.2d 699

**MAGMA COPPER COMPANY and State Compensation Fund, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**James L. Furr, Respondent Employee.**

**No. 1 CA–IC 1579.**

Court of Appeals of Arizona, Division 1, Department C.

July 6, 1977.

Twitty, Sievwright & Mills by John F. Mills and Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, the Industrial Commission of Arizona, Phoenix, for respondent.

Darrel G. Brown, Tucson, for respondent Employee.

JACOBSON, Presiding Judge.

The sole issue raised by this special action petition—Industrial Commission is whether the evidence supports the hearing officer's determination that the claimant has sustained a new, additional or previously undiscovered condition so as to justify reopening of his claim.

On June 16, 1960, the claimant, James L. Furr, received an industrial injury when a dynamite explosion occurred in his immediate vicinity while working underground for San Manuel Copper Company. As a result, he complained of ringing in his ears and was treated at the company hospital and was also treated by Drs. F. M. Findlay and C. R. Biggs. Mr. Furr filed an industrial claim and on January 9, 1961, the Industrial Commission entered a "Record of Commission Action" which cited the industrial episode, but concluded that "applicant had suffered an ear damage and that the injury in his ears was due to hypertension and obesity."

On January 10, 1961 Furr, through his attorney, filed a Petition and Application for Rehearing, alleging that the trauma of the accident resulted in loss of hearing, severe vertigo and damage to the head from concussion. The Commission on several occasions solicited Furr's attorney for medical evidence supporting this petition. None was forthcoming and on April 17, 1961 the Commission entered an order de-

nying rehearing and affirming its previous Record of Commission Action.

Nothing further was done insofar as this claim was concerned until approximately eleven years later. On June 16, 1972, Furr, through his present counsel, filed a Petition to Reopen for a new, additional or previously undiscovered condition. The condition alleged to be new or previously undiscovered is mental in nature and allegedly is causally related to the 1960 industrial episode.

The State Compensation Fund issued its denial of the Petition to Reopen and a timely Request for Hearing was made. The first hearing in this matter was held on January 25, 1973 and thereafter the hearing officer issued his decision which, among other things, determined that the Industrial Commission's Record of Commission Action and its subsequent affirmance of that action, was not final, and that therefore this claim had never been closed. Magma Copper sought review of that decision and this court in a memorandum decision (1 CA–IC 1090) set aside the award, determining that the hearing officer was legally incorrect in his characterization of the Commission action in 1961; that the 1961 action was final; and that Furr was entitled to a determination of his Petition to Reopen on its merits.

Following the setting aside of the award, two additional hearings were conducted, at the conclusion of which the hearing officer determined that Furr was entitled to reopen his claim on the grounds that he now suffers a new or previously undiscovered condition causally related to the 1960 industrial episode. Furr's present condition giving rise to the reopening is mental (schizophrenia). Magma has again sought review of this decision.

The facts developed at the three hearings indicate that Mr. Furr had a long history of mental problems. He was first hospitalized in 1952 at the Arkansas State Hospital where he remained substantially all the time until 1955 when he went A.W.O.L. During his stay at the Arkansas State Hospital, he was diagnosed as suffering "catatonic schizophrenia" and the prognosis was that while he would have periods of remission, "he will never get well."

Furr was employed by San Manuel Copper Company in 1957 and apparently enjoyed a good work record until the industrial episode on June 16, 1960. Following this explosion, Furr started to miss work and, according to his wife, had a complete change of personality. This resulted in Furr being admitted to the Pima County Hospital in January, 1961 (approximately during the same time that his industrial claim was being processed by the Commission) for mental problems when he was treated by Dr. Cutts, a psychiatrist. He was then committed to the Arizona State Hospital in April, 1961, where he was in and out of that institution for approximately three years. He has been under the treatment of the Pima County Mental Health Center since that time.

Upon his last release from the Arizona State Hospital (1964 or 1965), he worked for approximately eight months for Krueger Manufacturing Co. and worked briefly, but unsuccessfully, at the Tucson Drapery Company (owned by Furr's wife).

Dr. Philip Greenbaum, a psychiatrist, concluded that the trauma of the 1960 industrial explosion "apparently precipitated an acute psychotic period during the following three years, followed by a more chronic state, which was manifested by withdrawness and possibly some deterioration and convulsive seizures." Dr. Greenbaum was further of the opinion that Furr's present condition is totally disabling and that it is causally connected to the 1960 industrial episode. Two other psychiatrists, Drs. Keith Treptow and William B. McGrath, also testified. Dr. Treptow was uncertain of the causal connection between Furr's present condition and the 1960 explosion, but Dr. McGrath clearly found no causal connection.

Clearly the hearing officer on this state of the record could have found, as he did, that Furr's present condition is causally related to the prior industrial episode. Magma, however, does not attack the hearing officer's decision on a lack of conflict in medical evidence basis. Rather, Magma's argument is that the Commission's action of April, 1961, found that Furr suffered no disability referable to the 1960 industrial explosion. This action is entitled to *res*

**554**

*judicata* effect not only as to those matters actually litigated but also those matters which could have been litigated. The 1961 Commission action, having this legal effect, Dr. Greenbaum's testimony is non-comparative in nature as to Furr's condition in 1961 and the present time and therefore cannot afford a basis that his present mental condition is a "new or previously undiscovered condition". Further Magma argues that Furr, having knowledge of his mental condition immediately following the industrial episode, cannot "split" his cause of action, that is, a claim for physical injuries from his claim for mental injuries.

■ Turning first to the effect of the 1961 Commission action, we are of the opinion that the finality of that action has been determined by this court's previous memorandum decision in this case (1 CA–IC 1090). The clear import of that decision was that the Commission's action of 1961 was a *final decision*. While we are aware that memorandum decisions of this court are not entitled to precedent-making value, they are determinative of issues of *res judicata* and law of the case. Rule 48(a), Rules of the Supreme Court, 17A, A.R.S. The finality of the Commission's action in 1961 was previously determined and is the law of the case on this review.

■ Given the finality of that action, what is its legal effect? We hold that a final decision of the Industrial Commission is *res judicata* and conclusive as to all facts which were decided, or *could have been decided* at that time. *London v. Industrial Commission,* 71 Ariz. 111, 223 P.2d 929 (1950); *Arizona State Welfare Dept. v. Industrial Commission,* 25 Ariz.App. 6, 540 P.2d 737 (1975); *Ringgold v. Industrial Commission,* 21 Ariz.App. 273, 518 P.2d 592 (1974); *Talley v. Industrial Commission,* 105 Ariz. 162, 461 P.2d 83 (1969).

■ The Commission's action in 1961 states that Furr has no disability referable to the industrial episode. A reading of the Commission's file at that time indicates that the only matters it considered were physical in nature, that is, injuries to the ears. However, it is clear that it *could have considered* Furr's mental condition at that time. Mrs. Furr graphically testified to Furr's changed personality immediately following the exposure to the mine explosion.

Furr was hospitalized at Pima County Hospital for mental problems in January, 1961 and was actually committed to the Arizona State Hospital in April, 1961 because of these mental problems. Dr. Greenbaum's characterization of Furr's "acute psychotic period" occurred before the time the Commission's action became final. The Commission obviously, if it had been asked to do so, could have determined at the time its action became final, the causal relationship between the industrial episode and Furr's obvious mental problems. This was not done.

We therefore conclude that because of the *res judicata* effect of the Commission's action, that Furr, at least in April, 1961, was not suffering from a disability, mental or physical, related to his industrial injury.

■ This brings us to Dr. Greenbaum's testimony. A fair characterization of Dr. Greenbaum's testimony is that Furr's present condition is causally related to the industrial episode and not the pre-existing schizophrenia. However, Dr. Greenbaum did not testify that this condition is "new or previously undiscovered" in that it arose subsequent to the April, 1961 Commission action. In fact, his testimony is that Furr now suffers from the same condition that required his hospitalization in 1961, although to a lesser degree, and which has been present since the time of the industrial explosion. This testimony will not support a decision on reopening for a "new or previously undiscovered condition". *Standard Brands Paint Co. v. Industrial Commission,* 26 Ariz.App. 365, 548 P.2d 1177 (1976); *Arizona State Welfare Dept. v. Industrial Commission, supra.*

Neither Dr. Treptow's nor Dr. McGrath's testimony, by any stretch of the imagination, bears upon this comparative status between Furr's mental condition in 1961 and his present condition.

Finding the evidence does not support the hearing officer's decision, it is set aside.

FROEB, C. J., and OGG, J., concur.