616 P.2d 42

SMITTY'S SUPER VALU, INC., and United States Fidelity & Guaranty Company, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Max E. Sterrett, Respondent Employee.

No. 14732–PR.

Supreme Court of Arizona, In Banc.

July 18, 1980.

Rehearing Denied Sept. 4, 1980.

Moore, Jennings, Kepner, Scheffing & Hart by Craig R. Kepner, John R. Cunningham, Phoenix, for petitioners.

James L. Stevenson, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Jerome & Gibson by Don A. Fendon, Richard A. Gibson, Phoenix, for respondent employee.

STRUCKMEYER, Chief Justice.

This appeal by Smitty's Super Valu, Inc. and its insurance carrier seeks to review a decision of the Industrial Commission finding that claimant, Max Sterrett, had a psychophysiological reaction engrafted upon an industrial injury, or, alternatively, that he had a previously undiscovered discogenic problem rather than a previously diagnosed spinal ligamentous strain. The Court of Appeals held that the award ordering a reopening of claimant's case was not supported by any evidence and set the award aside. We accepted jurisdiction pursuant to Rule 23, Rules of Civil Appellate Procedure, 17 A.R.S. Opinion of the Court of Appeals, 126 Ariz. 377, 616 P.2d 52 (App.1979), vacated. Award of the Industrial Commission affirmed.

It is petitioner's position first that there was no medical evidence establishing the causal connection between Sterrett's current condition and his industrial injury of October 27, 1976. But there is.

Maier I. Tuchler, M. D. testified on May 19, 1978, as follows:

"Q. What was your diagnosis?

A. I felt that Mr. Sterrett had engrafted upon low back disability. Let me try to find it.

Q. The next to the last paragraph there, Doctor.

A. Yes. Engrafted upon a chronic low back strain or disability. There had been some problems there over several previous years. He had developed a psychophysiological reaction, a neurotic reaction. I also felt there was some hysterical components, some emotional compo-

nents, and I also felt that there was a personality disorder as I saw it.

I noted him to be defensive, irritable, short of temper, and it was also the opinion that there was some tendency to use beer as a means of relaxation, probably to excess.

Q. Now, when you say he had a physiological reaction, how does that affect the individual?

A. Well, by definition it is an emotional reaction. In this case it's engrafted upon a low back strain. Because of its engraftment on a low back strain, it essentially continues or is an extension of those symptoms.

\* \* \* \* \* \*

Q. Do you feel or have you been able to form an opinion as to whether or not his present pain and his present psychiatric condition is related to his industrial injury of 1976?

A. I have an opinion.

MR. KEPNER: I object to the form of the question.

THE HEARING OFFICER: The objection's overruled. You may answer.

THE WITNESS: It is causally connected, though I must admit that there's a preceding chain of other traumas that have been experienced."

The law is settled. We have previously quoted with approval from Larson, Workmen's Compensation Law § 42.22, in *Murray v. Industrial Commission*, 87 Ariz. 190, 349 P.2d 627:

" \* \* \* when there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, [conversion hysteria,] or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensable. Dozens of cases, involving almost every conceivable kind of neurotic, [psychotic, depressive,] or hysterical symptom, [functional overlay, or personality disorder,] have accepted this rule." Larson, supra, at 42.22.

And see *Vance v. Industrial Commission*, 94 Ariz. 142, 382 P.2d 557 (1963); *Hatfield v. Industrial Commission*, 89 Ariz. 285, 361 P.2d 544 (1961). Since we find ample evidence to support a finding that Sterrett had a neurological reaction engrafted on an industrial injury, we do not find it necessary at this time to determine whether Sterrett had a previously undiscovered discogenic problem.

■ Petitioner's second argument is that Sterrett failed to offer any comparative evidence of change in his condition between the entry of the initial award in April 1977 and the filing of the petition to reopen. He urges in this respect that the granting of Sterrett's petition to reopen is precluded by the doctrine of res judicata, arguing:

"As is established by all of the medical reports and testimony \* \* \* there has been no essential change in claimant's complaints and symptoms from the date of the October 27, 1976 injury until the present time."

We think it is sufficient to point out the testimony of Dr. Eugene J. Chandler, who evaluated claimant on April 21, 1977:

"After review of the file and physical examination today, it is my opinion that the patient's condition with reference to the injury of 10/27/76 is stationary. No further examinations or treatments are indicated. There are no significant objective physical findings and no evidence of measurable physical impairment which can be attributed to the accident in question. This patient is capable of returning to his former occupation."

The Notice of Claim Status terminating Sterrett's compensation and benefits issued by United States Fidelity and Guaranty Company on the 26th of April, 1977 is missing from the Industrial Commission file. But it is clear that Dr. Chandler's evaluation was the basis for it.

By A.R.S. § 23–1061(H), an employee may reopen his claim by filing with the Commission a petition requesting a reopening upon the basis of new, additional or previously undiscovered condition. The condition diagnosed by Dr. Tuchler was a

370

condition which was not discovered at the time Sterrett's case was closed in April of 1977. He did not see a psychologist until April of 1978 or a psychiatrist until May of 1978. The Notice of Claim was not res judicata either of the neurological reactions or a possible discogenic problem.

■ The petitioner next argues that Sterrett failed to produce evidence of comparative change since the initial entry of the award. But he has. Dr. James Rodney Pitts testified on September 12, 1978, as follows:

"Q. The fall of 1977 you submitted a report in the file requesting to reopen this case, is that correct?

A. Yes, that is correct.

Q. At that time had you noticed any change in the symptoms or any change in your diagnosis?

A. At that time he commenced having what we call sciatic pain radiating down the posterior aspect of the lower limb. I was questioning whether or not perhaps he had a discogenic problem instead of my original diagnosis.

Q. You've continued to see him on a regular basis since that fall of 1977 as well?

A. That's correct.

Q. When was the last time you seen [sic] him?

A. The last time was the 28th of August 1978.

Q. Now, Doctor, what is his main problem, the main limitation on his activities at the present time?

A. His problem is persistent pain in his back and his lower limb. * * * "

■ Finally, petitioner complains that the award reopening the case lacks specificity. We find no merit whatsoever to this argument. Finding No. 3 of the hearing officer states:

That the testimony of Maier I. Tuchler, M. D., board certified neurologist and board certified psychiatrist, was essentially as follows: That in his opinion, the applicant had developed a psychophysiological reaction, a neurotic reaction with hysterical components, which was engrafted upon his chronic low back strain, or disability; that he believes that the applicant needs treatment for this condition and also biofeedback treatment; that the applicant is also suffering depressing reactions and all of this constitutes new, additional or previously undiscovered disability, causally related to his industrial injury of October 27, 1976; that the medical report of William F. Sheeley, M. D., indicates that the applicant has a personality disorder which he believes pre–existed his injury of October 27, 1976; that he does not believe that it was affected for better or for worse by the industrial incident and he does not believe that it will significantly be feasible to treat the applicant's condition and it should be considered stationary; that he believes the applicant is not motivated for treatment; that the testimony of Clinton P. Street, Ph. D., was taken; that Dr. Street is a psychologist, licensed by the state of Arizona; that he performed certain testing on the applicant and believes the applicant has a bright, normal intelligence level; that he shows clinical depression; that he believes the applicant should undergo biofeedback treatment and training; that he believes the tests clearly indicate a moderate neurotic depression. That the testimony of James Rodney Pitts, M. D., board certified orthopedic surgeon, was essentially as follows: that he examined the applicant and recommended that his case be reopened; that the applicant had not had previous sciatica and that he felt that this could be a discogenic problem rather than his previous suspected spinal ligamentous strain; that in his opinion the applicant should have further diagnostic studies consisting of a myelogram and if they turned out to be nondiagnostic then he would believe that the applicant should be treated as a pain clinic patient; that he can't state which injury the applicant has had out of his multiple injuries which is causing his pain and it is a result of one of them."

The award of the Industrial Commission is affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.