627 P.2d 692

SALT RIVER PROJECT, Petitioner Employer and Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

William Dent, Respondent Employee.

No. 15014–PR.

Supreme Court of Arizona, In Banc.

April 8, 1981.

Jennings, Strouss & Salmon by Steven C. Lester, Phoenix, for petitioner.

Calvin Harris, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Gorey & Delaney by Edgar M. Delaney, Phoenix, for respondent employee.

STRUCKMEYER, Chief Justice.

Respondent-employee William Dent's petition to reopen a claim for workmen's compensation was granted. Petitioner, Salt River Project, appealed, urging that the reopening was barred as res judicata. The Court of Appeals agreed and in a memorandum decision, *Salt River Project v. Industrial Commission*, 1 CA–IC 2186, filed June 24, 1980, set aside the award of the Commission. This Court granted review. Decision of the Court of Appeals vacated. Award of the Industrial Commission affirmed.

On December 2, 1976, respondent employee William Dent was working as a steam mechanic for petitioner Salt River Project (SRP). While disassembling a gas valve, Dent pulled on a wrench and felt a sharp pain in his lower back. A claim for benefits was accepted and benefits were paid through December 29, 1976. A Notice of Claim Status was then sent to Dent finding his condition stationary without permanent disability. The Notice of Claim Status was based on a medical report by Samuel S. Kaplan, M.D., who concluded Dent had no permanent impairment and was in no need of further orthopedic care. Doctor Kaplan found no evidence of a degenerative disc and concluded Dent's symptoms of pain probably resulted from a personality disorder.

Dent filed a request for a hearing, contending his injury resulted in permanent disability. Hearings were held on May 19 and July 6, 1977. Dent presented no expert testimony as to the physical cause for his

back pain which radiated into his left leg. Instead, he presented testimony from a psychiatrist, William F. Sheeley, M.D., which was that Dent had a hysterical personality which pre-existed the industrial accident and that this was the cause of his present complaints of pain. Dr. Kaplan also testified at the hearings. He stated that he had re-examined Dent on May 3, 1977 and reviewed results of a myelogram and an EMG performed in January, 1977. The results appeared normal to Doctor Kaplan. He again reached the conclusion that there was no permanent disability, there was no need for further orthopedic care, and Dent's pain was the product of a personality disorder.

On July 27, 1977, the hearing officer ordered the Notice of Claim Status terminating Dent's benefits as of December 29, 1976 made final. Upon a request for review, the hearing officer affirmed the award on August 29, 1977. The Court of Appeals subsequently upheld the award in a memorandum decision, *Dent v. Industrial Commission*, 1 CA–IC 1856, filed June 8, 1978.

On August 19, 1977, Dent filed a petition to reopen, stating he was to undergo disc surgery. Benefits were denied and Dent requested a hearing, which was held on June 28 and September 22, 1978. The testimony at these hearings revealed Dent was examined by a number of physicians in January 1977, months before the hearings at which the psychiatric evidence was presented. One of the physicians, Frederick P. Snyder, M.D., testified he suspected in January that Dent had a disc problem and advised him to undergo an EMG and a myelogram. These two tests were performed on Dent that month after his family physician, Paul M. Steingard, D.O., admitted Dent to the hospital. While Doctor Steingard originally believed Dent had disc trouble, after reviewing the results of the two tests and consulting with another doctor, Doctor Steingard diagnosed a lumbo sacral strain with a psychogenic overlay. Treatment was limited to physical therapy and later psychiatric consultation.

Dent, at the time of the original hearings, was experiencing back pain radiating down into the left leg. He testified concerning this left leg pain in May 1977. In July 1977, according to Doctor Snyder's testimony, Dent returned to him complaining his condition was worsening and that the pain was now radiating into both legs. Doctor Snyder reviewed the tests conducted in January and agreed with Doctor Steingard they were normal. An EMG and a myelogram were performed again and in the latter Doctor Snyder located a protrusion at L–5, S–1. His diagnosis was a soft, degenerative disc at that location. On August 19, 1977, he performed surgery and removed the disc, which was soft and degenerative.

The hearing officer granted Dent's petition to reopen and awarded medical and temporary disability benefits from the date of the surgery.

■ Petitioner appealed, adopting the position that Dent could not "split his cause of action" and present only his psychological condition at the first hearing and then present his physical condition on his petition to reopen, see *Magma Copper v. Industrial Com'n.*, 115 Ariz. 551, 566 P.2d 699 (App. 1977); that by limiting his claim at the first hearing to his mental condition, res judicata bars the petition to reopen. The holding in *Magma Copper* that a worker "cannot 'split' his cause of action, that is, a claim for physical injuries from his claim for mental injuries", *id.* at 554, 566 P.2d 699, is undoubtedly correct. All known disabilities must be raised or they will be barred. See *Smitty's Super Valu v. Industrial Com'n*, 126 Ariz. 367, 616 P.2d 42 (1980). But *Magma Copper* is not controlling here. There the claimant had both physical and mental disabilities, the former being a loss of hearing and the latter being aggravated schizophrenia. Since the claimant knew of both disabilities at the time of his original claim and failed to make any claim for his personality disorder, it was held that he was not entitled to reopen for the asserted mental disability.

■ Dent, however, has only one disability, that being his lower back pain. At the first set of hearings, Dent attempted to show that this pain was caused by the De-

cember 1976 injury aggravating his pre-existing hysterical personality. The petition to reopen was predicated on a different ground, namely, that Dent's pain was caused by the soft, degenerative disc at L–5, S–1.

A.R.S. § 23–1061(H) provides:

"An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition * * *."

Where the true cause of the worker's physical or mental disability was not definitely known at the time of the prior award finding no permanent disability, the discovery of the true cause is grounds for a reopening under the "previously undiscovered" clause of A.R.S. § 23–1061(H). *Smitty's Super Valu v. Industrial Com'n, supra; Crocker v. Industrial Commission,* 124 Ariz. 566, 606 P.2d 417 (1980); *Bell v. Industrial Commission,* 126 Ariz. 536, 617 P.2d 44 (App.1980); *Pascucci v. Industrial Com'n.,* 126 Ariz. 442, 616 P.2d 902 (App.1980); *Garrote v. Industrial Commission,* 121 Ariz. 223, 589 P.2d 466 (App.1978). Dent did not split his cause of action. Consequently, the petition to reopen was not barred as res judicata.

Petitioner points out that Dent admitted injuring his back in 1972 and 1974. These injuries kept Dent off work for one week and thirteen weeks, respectively. According to Dent, the pain from these injuries never completely disappeared. He testified:

"Fully recovered, no. I had a stretch there when things felt good, but I was never free of any aches or pains in my back. The leg progressively got worse. I was atrophied and limping all the time. A lot of times I didn't have pain, but I still limped."

Dent also admitted the pain from the December 1976 injury was the same or similar to the pain he suffered after the two prior injuries. The doctors who treated Dent af-

ter these injuries felt his symptoms suggested a degenerative disc. The reports of these doctors are in the Commission's files and were supplied by petitioner, but only one of the doctors, Doctor Steingard, testified at the reopening hearings. Petitioner therefore argues Dent and his physicians were aware of the disc pathology at the time of the original hearings.

The fact remains, however, that at the time of the original hearing, the doctors who had examined Dent believed the pain resulting from the December 1976 injury was caused by a strain or his hysterical personality or both. While the physicians considered disc pathology a possibility and Doctors Steingard and Snyder made it their initial diagnosis, they concluded otherwise after reviewing the results of the myelogram and EMG. It was not until August 1977 that there was a firm diagnosis of a degenerative disc. The award allowing Dent to reopen his claim was proper. See *Bell v. Industrial Commission, supra;* Pascucci v. Industrial Com'n., supra.

■ Petitioner also argues the hearing officer failed to consider the evidence of the two prior injuries and the past diagnosis of a degenerative disc, asserting that this evidence establishes that the disc pathology discovered by Doctor Snyder in August 1977 was not related to the December 1976 injury. We disagree. It is fundamental to workmen's compensation law that the employer takes an employee as he finds him and if an industrial injury operates on an existing bodily condition or predisposition and produces further injury as a result, that result is said to be "caused" by the industrial injury. *Harbor Insurance Company v. Industrial Commission,* 25 Ariz.App. 610, 545 P.2d 458 (1976); *Nelson v. Industrial Commission,* 24 Ariz.App. 94, 536 P.2d 215 (1975). See *Allen v. Industrial Commission of Arizona,* 124 Ariz. 173, 175, 602 P.2d 841 (1979). The finding of a relationship between the disc and the 1976 injury which was made by the hearing officer will be sustained if it is reasonably supported by the evidence. An appellate court will not weigh the evidence, but consider it in the

light most favorable to sustaining the finding. See *Olszewski v. Industrial Commission*, 113 Ariz. 282, 551 P.2d 551 (1976).

The finding of a causal relationship was supported by Doctor Snyder's opinion which took into account Dent's past injuries:

"Q. Based on the history related to you by the applicant concerning the two incidents, the one in '72, at which time he was off for approximately a week and had symptoms referable to the left lower back and left lower extremity and the incident in '74 where he was off for approximately 14 weeks, was seeing Dr. Nichols, who thought he had a possible disk pathology with a lumbo sacral sprain and his most recent injury in 1976, have you formed an opinion as to whether you feel that the disk that you noted and discovered at surgery in August of 1977, was related to the injury of December, 1976?

"A. Yes, sir. I have an opinion.

"Q. What is that opinion?

"A. I think that the symptoms prior to that, in the two previous episodes of injury, were just preludes to that and the wrench injury in December was obviously the one, from a clinical point of view, that just tipped the scale, just made his symptoms so much worse, that he had to quit working and was getting bilateral pain."

■ Petitioner complains its request for a subpoena directed to Doctor Kaplan was not honored by the hearing officer. Doctor Kaplan examined Dent in January and May 1977 at petitioner's request and testified in the July 1977 hearing. At the end of the first hearing on the petition to reopen, counsel and Hearing Officer Galloway discussed what doctors needed to be subpoenaed for a further hearing. Petitioner's counsel requested subpoenas for Doctor Steingard and Doctor Kaplan, detailing the testimony expected from them. While Hearing Officer Galloway questioned the strategic value in calling Doctor Kaplan, he agreed to issue the subpoena.

"If you want him, I guess we'll subpoena him.

\*    \*    \*    \*    \*    \*

Well, very well. If there's nothing further today, a further hearing will be scheduled to take the testimony of Drs. Frederick Snyder, Samuel Kaplan and Paul Steingard. You will receive a Notice."

At the second hearing on the reopening petition, only Doctors Snyder and Steingard testified. Subpoenas for them appear in the record. No subpoena appears for Doctor Kaplan. At the end of the second hearing, at which a new hearing officer presided, petitioner's counsel stated:

"There's one thing, Mr. Hearing Officer, since you didn't handle—I originally requested a subpoena for Dr. Kaplan and there was some discussion at the end of the last hearing. I see the Hearing Officer, Mr. Galloway, did not issue a subpoena for Dr. Kaplan and I'm taking that as a ruling against me in regard to the requesting of a subpoena."

The hearing officer replied:

"You can ask him [Mr. Galloway] about that.

\*    \*    \*    \*    \*    \*    .

If there are any further matters to be considered \* \* \* it should be brought to the attention of Mr. Galloway \* \* \*."

The record does not indicate that any further effort was made to obtain the testimony of Dr. Kaplan. Petitioner was given an opportunity to assert the need for Dr. Kaplan's testimony. Its brief does not claim that any further request, written or oral, formal or informal, was made to secure Dr. Kaplan's evidence. Nor does there appear in the record before the Commission any request for a further hearing at which he could testify or any argument his testimony might in some fashion influence the decision in the case. We hold that lacking any of the foregoing, petitioner may not use the failure to subpoena Dr. Kaplan as grounds to vacate the award.

■ By A.R.S. § 23–1061(H), no surgical benefits or monetary compensation are payable for any period prior to the date the

petition to reopen is filed. Petitioner contends that under this statute benefits should only be awarded from October 4, 1977, since that was the date the medical report in support of the petition to reopen was filed with the Commission. Were we to sustain this contention, the effect would be to deny coverage for the disc surgery performed on August 19, 1977, the day the petition to reopen was filed, and coverage for claimant's hospitalization.

While the statute provides the "petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim", we have held that "as long as the medical report is filed within a reasonable time after the petition to reopen, it will be deemed to have accompanied the petition." *Fullen v. Industrial Commission*, 122 Ariz. 425, 429, 595 P.2d 657 (1979). Once the report is filed and jurisdiction acquired, the benefits may be awarded from the date the petition was filed as long as the medical report follows within a reasonable time. *Fullen v. Industrial Commission*, supra.

The report in the instant case was filed six weeks after the petition. The delay was not shown to be the fault of Dent or his counsel. We do not consider that the delay was unreasonable. Benefits were properly awarded from August 19, 1977.

The award of the Industrial Commission is affirmed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.