NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RICHARD HUGHES, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

TRANSTYLE, *Respondent Employer*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION,
*Respondent Party in Interest.*

No. 1 CA-IC 19-0030
FILED 3-19-2020

Special Action - Industrial Commission
ICA Claim No. 20182-200394
Carrier Claim No. NONE
C. Andrew Campbell, Administrative Law Judge

**AFFIRMED**

COUNSEL

Richard Hughes, Scottsdale
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Industrial Commission of Arizona, Phoenix
By Stephen D. Ball
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

---

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

¶1 Petitioner Richard Hughes ("Hughes") appeals from an Industrial Commission of Arizona ("ICA") award and decision upon review finding his claim non-compensable. The administrative law judge ("ALJ") resolved the issue in favor of respondent employer, Transtyle, Inc. ("Transtyle"). We affirm the award and decision upon review because the ALJ's determinations are reasonably supported by substantial evidence in the record.

**FACTS AND PROCEDURAL HISTORY**

¶2 Hughes worked for Transtyle as a bus driver for approximately four and one-half years. During Hughes' tenure with Transtyle, several Transtyle clients complained about Hughes, and he also had contentious interactions with Transtyle management, including owner Fred Sadeghi ("Sadegji").

¶3 In July 2018, a client contacted Transtyle with several complaints about Hughes during an on-going tour trip in Las Vegas. Sadeghi convinced the client to allow Hughes to continue driving, but the next morning, on July 17, Hughes returned with the bus to the Phoenix area without notifying Sadeghi. Hughes did not respond to numerous calls or text messages from Sadeghi. Several hours later, GPS mapping indicated the bus was parked outside Hughes' home. Sadeghi sent Hughes another text message, threatening to report the bus as stolen if he did not return it to Transtyle.

2

¶4   Later that afternoon, Hughes returned the bus to Transtyle premises, and he and Sadeghi had an argument. Sadeghi told Hughes that he was fired and no longer allowed on Transtyle property. Hughes did not leave. Instead, Hughes used his cell phone to take video of Sadeghi, moving the cell phone very close to Sadeghi's face. Sadeghi then pushed Hughes' phone away from his face and asked his daughter, who also works for Transtyle, to call the police. Hughes also called the police, alleging that Sadeghi punched him in the face. The Scottsdale Police Department issued Hughes a trespass warning. A responding officer asked Hughes if he needed medical attention; Hughes told the officer "he was not injured." Thereafter, Hughes filed a worker's report of injury, alleging he had been punched in the face and had twisted his knee on July 17 while trying to "get away" from Sadeghi, all occurring during the course and scope of his employment with Transtyle.

¶5   After the ICA denied Hughes' claim of a workplace injury,[1] Hughes requested a hearing. Hughes and Sadeghi each testified before the ALJ and offered differing accounts of the incident. Sadeghi testified that he did not strike Hughes. He stated that he attempted to get Hughes to leave the property, especially the dangerous garage area. Sadeghi also insisted he did not hit Hughes, but he touched Hughes' cell phone "just to push it that way" and get it out of his face.

¶6   Hughes alleged that when Sadeghi "struck me in the face," he twisted to avoid the blow and felt a pop in his left knee. On the day after the incident, Hughes visited the emergency room for pain in his left knee. X-rays were taken of his knee, and he was instructed to schedule an appointment with an orthopedic surgeon. The only potential abnormality reflected in an MRI of his left knee was some cartilaginous growth on the bone (enchondroma) versus necrotic bone tissue caused by loss of blood supply to the bone (bone infarct). Neither bony abnormality was caused by any recent trauma, but as the MRI report indicated, instead constituted "long-standing non-traumatic conditions." Hughes' primary care physician referred him to board-certified orthopedic surgeon Dr. Cummings, who began treating Hughes in late August 2018.

¶7   At the request of Transtyle's counsel, Dr. Cummings also testified before the ALJ and stated that the conditions that appeared on the MRI were "[g]radual onset, chronic conditions" and unrelated "to the altercation." As to the pain symptoms reported by Hughes, Dr. Cummings

---

[1]  Transtyle is a "non-insured" employer; as such, worker compensation claims are administered by the ICA Special Fund.

stated, "it's very probable" the patient's subjective pain was "related to the twisting injury." No other medical professional testified, and none of the parties sought to introduce testimony from another medical professional involved in Hughes' medical care.

¶8 The ALJ considered medical records provided by Hughes as well as police reports and the video from Hughes' cell phone. The police report noted that the video on Hughes' cell phone showed "[Sadeghi] gently trying to slap the phone out of his face." Police records for Hughes' call to 911 indicate "[Hughes] was the problem. No assault occurred. Trespass letter issued . . . ."

¶9 The ICA issued a Decision Upon Hearing and Findings and Award Regarding Noncompensable Claim (the "Decision"), in which the ALJ found the submitted evidence supported Sadeghi's version of events. The Decision determined that "[Hughes'] version of events is not credible" and rejected Dr. Cummings' assessment of a causal connection between the incident and Hughes' complaints of knee pain because his medical opinion relied on Hughes' account of the incident. The Decision upheld the initial denial of Hughes' claim and found he "did not sustain an injury which arose out of and during the course of employment."

¶10 Hughes requested review, and the ALJ affirmed the Decision. This statutory special action followed. We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) and 23-951(A).

## ANALYSIS

¶11 In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We review the evidence in the light most favorable to sustaining the award, and we will affirm if the ICA decision is reasonably supported by evidence in the record. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶12 Hughes argues the ALJ should have obtained testimony from his primary care physician. The petitioner has the burden to prove the compensability of the claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). The record indicates Hughes had ample opportunity to request the testimony of his primary care physician, but he chose not to request additional hearings or that subpoenas be issued for other medical professionals to testify. In fact, the hearing transcripts show five instances where Hughes assured the ALJ that he did not wish to schedule testimony from another medical provider. Thus, Hughes may not now use the lack of

testimony from his primary care physician as a basis to set aside the Decision. *See Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 545 (1981).

**¶13**　　　　Hughes also argues the ALJ erred in determining the incident did not happen on Transtyle property. The ALJ did not make such a finding. To the extent Hughes challenges the ALJ's credibility determination, we find sufficient evidence in the record to support the ALJ's finding that Hughes' testimony as to how the incident occurred lacked credibility, and more importantly, that the incident did not cause a compensable injury. *See Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984). And to the extent Hughes argues the evidence in the record supports his version of events, we will not consider these arguments because we do not reweigh the evidence. *See Salt River Project*, 128 Ariz. at 544-45.

### CONCLUSION

**¶14**　　　　For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA