NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NNENNA IFEZUE, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

IRONWOOD PHYSICIANS PC, *Respondent Employer*,

COPPERPOINT PREMIER INSURANCE CO, *Respondent Carrier*.

No. 1 CA-IC 21-0006
FILED 9-21-2021

Special Action - Industrial Commission
ICA Claim No. 20192-110167
Carrier Claim No. 1000011099
The Honorable Jeanne Steiner, Administrative Law Judge

**AFFIRMED**

APPEARANCES

Nnenna Ifezue, Mesa
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

CopperPoint Premier Insurance Company, Phoenix
By Deborah E. Mittelman
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A M P B E L L**, Judge:

**¶1**        Petitioner Nnenna Ifezue seeks review of an Industrial Commission of Arizona ("ICA") Award closing her workers' compensation claim. The Administrative Law Judge ("ALJ") found no further need for active medical treatment of her industrial injury and no permanent impairment. Having reviewed the record, we affirm.

## BACKGROUND

**¶2**        In July 2019, Ifezue leaned back in a chair at work and fell on her right side. The fall injured her right arm, right shoulder, right hip, and neck. She was helped to her feet by co-workers and experienced pain, but because she was only on her second day at a new job, she continued working that day and for the next several weeks. Over those weeks, her symptoms worsened. About three weeks after the fall, she sought medical treatment. Her workers' compensation claim was accepted by Respondent CopperPoint Premiere Insurance Co., and she received treatment over the next several months from Dr. Michael McGrath.

**¶3**        In January 2020, two new doctors, Dr. Amit Sahasrabudhe and Dr. James Maxwell, conducted an Independent Medical Examination ("IME"). The IME found no permanent impairment, and CopperPoint closed Ifezue's claim, even though she had not been discharged by Dr. McGrath. Ifezue challenged the closure of her claim. The ALJ received evidence and heard testimony from Ifezue as well as Drs. McGrath, Sahasrabudhe, and Maxwell.[2]

---

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]        Other than the hearing testimony, the only medical evidence in our record is the IME report, which summarizes Dr. McGrath's findings and treatment from before January 2020.

¶4　　　　Dr. McGrath, a board-eligible orthopedic surgeon, testified that his initial diagnoses were neck strain, right shoulder strain, right elbow inflammation, and right hip joint inflammation. During the first six months of treatment, he gave Ifezue steroid injections in the right shoulder and right hip area to alleviate her pain. Those injections worked temporarily, but her pain returned within two weeks. Dr. McGrath also prescribed anti-inflammatories and muscle relaxers, but they only helped temporarily as well. About six months into treatment, his diagnosis evolved into "piriformis syndrome." By that time, he did not consider Ifezue medically stationary and recommended further treatment, including physical therapy and electrical stimulation. Throughout the treatment, Dr. McGrath advised Ifezue not to work because her right side was "so weak."

¶5　　　　Dr. Sahasrabudhe, a board-certified orthopedic surgeon, testified that both he and Dr. Maxwell examined Ifezue but could find no objective condition resulting from her work injury that could cause the symptoms she described. Dr. Sahasrabudhe reviewed Dr. McGrath's records and noted that, after the injury, Ifezue described her pain as increasing rather than decreasing. This was unusual. His review of the magnetic resonance imaging ("MRI") showed no objective evidence that would explain Ifezue's continuing complaints or lack of improvement. The MRI of her right shoulder showed evidence of a contusion that should have resolved by the time of the IME. Dr. Sahasrabudhe testified similarly about the MRI of Ifezue's right hip.

¶6　　　　Dr. Sahasrabudhe also expressed reservations about Dr. McGrath's diagnosis of piriformis syndrome. Dr. McGrath testified that he came to that diagnosis after giving Ifezue certain hip injections, to which she responded favorably. Dr. Sahasrabudhe testified that hitting the piriformis with a targeted injection would be very difficult, even when using guided imaging, because it is a tiny muscle, deep inside the pelvis. He saw no indication that Dr. McGrath used such guidance. Furthermore, he testified that piriformis syndrome is an uncommon diagnosis, often used when a physician cannot otherwise identify the source of a patient's complaints about pain in the hip area. He concluded there was no objective evidence that Ifezue's work injury was the cause of the pain she described, especially as her observable injuries had ample time to heal before the IME. He contended that Ifezue was medically stationary with no permanent impairment.

¶7　　　　The ALJ found Dr. Sahasrabudhe's testimony "more probably correct and well-founded." The ALJ closed the claim without permanent

impairment. Ifezue requested review, but the ALJ affirmed the prior decision. Ifezue then timely sought our review.

## DISCUSSION

**¶8**　　　In reviewing the ICA's findings and awards, we defer to the factual findings of the ALJ but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in the light most favorable to upholding the Award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). The ALJ has the primary responsibility to resolve conflicts in medical-opinion evidence. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000). We defer to the ALJ's resolution of conflicting evidence and affirm the ALJ's findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975). An award based on conflicting medical testimony will not be disturbed. *Smiles v. Indus. Comm'n*, 2 Ariz.App. 167, 168 (1965).

**¶9**　　　On appeal, Ifezue argues that the ALJ should have accepted Dr. McGrath's opinion and rejected Dr. Sahasrabudhe's. She asserts that the evidence in favor of Dr. McGrath's opinion is stronger and that Dr. McGrath was a more credible witness. However, we do not reweigh the evidence. *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544 (1981). Furthermore, "when two equally honest and experienced expert witnesses reach opposite conclusions, the only thing the trier of fact can do is to decide which one of these witnesses is more probably correct in his conclusion," and "we are bound by the conclusion . . . reached as to which witness was more probably correct." *Hewett v. Indus. Comm'n*, 72 Ariz. 203, 209 (1951). As we stated in *Kilkenny v. Industrial Commission*, "where there is a conflict in the evidence, the [ALJ] has the duty of resolving the conflict, and said resolution will not be disturbed on appeal even if this Court as the trier of fact would have reached a different conclusion on the evidence." 15 Ariz.App. 571, 573 (1971) (internal citations omitted). Here, the ALJ found Dr. Sahasrabudhe's opinion "well-founded" and "more probably correct," and there is ample evidence in the record supporting the ALJ's conclusion. Dr. Sahasrabudhe, who was board-certified, was better qualified than Dr. McGrath, who was only board-eligible. Moreover, Dr. Sahasrabudhe's opinion was based on objective observations while Dr. McGrath's piriformis diagnosis appeared to be speculation resulting from trial and error. Ifezue credibly testified that she was suffering. But she did not show that her suffering resulted from a work-related injury.

**CONCLUSION**

¶10        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA