NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEPHEN MERKLEY, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

PAM HEALTH REHABILITATION HOSPITAL OF SURPRISE, *Respondent Employer*,

ACCIDENT FUND INSURANCE CO. OF AMERICA, *Respondent Carrier*.

No. 1 CA-IC 25-0014

FILED 01-16-2026

Special Action - Industrial Commission
ICA Claim No. 20240600041
Carrier Claim No. UHC230701987
The Honorable Rachel C. Morgan, Administrative Law Judge

**AFFIRMED**

COUNSEL

Stephen Merkley, Surprise
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**P E R K I N S**, Judge:

¶1        Stephen Merkley seeks "reversal" of an Industrial Commission of Arizona ("ICA") award concluding he did not suffer an industrial injury. An ICA Administrative Law Judge ("ALJ") did not find Merkley's account of the injury credible when compared to four co-workers who testified that he did not mention an injury at the time he claims the accident happened. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        PAM Health Rehabilitation Hospital of Surprise ("PAM") is an acute inpatient rehabilitation facility. At the time of the alleged injury in February 2024, Merkley worked as director of operations for PAM.

¶3        In 2022, Merkley underwent five surgeries on his right foot and ankle, including an ankle fusion that placed a metal rod through his heel into his ankle and tibia, repair of a chronic diabetic ulcer, and treatments for infection, non-healing wounds, and diabetes-related conditions. In September 2022, while being treated for an abscess in his right ankle and foot, Merkley's doctor advised him that a below-the-knee amputation was his best option, noting, "I feel as though we have tried and failed at attempted salvage of the right foot and ankle." Merkley instead wore a CAM ("controlled ankle motion") boot until February 2024.

¶4        In late February 2024, Merkley had an emergency amputation of his right leg below the knee. On February 29, he informed PAM that he intended to file a claim for workers' compensation to cover the surgery for an alleged work injury on Tuesday, February 13, 2024. PAM and its carrier,

Accident Fund Insurance Co. of America, denied the claim. Merkley requested a hearing to prove he had a compensable injury.

¶5          At the hearing, Merkley testified that on February 13, he was washing dishes in the kitchen with dietician Lisa Thompson when his right foot slipped on the wet floor and "slammed into the wall." He heard a pop, and felt a snap and pain in his foot. He told Thompson that he was hurt and went to an office to rest the foot and elevate it. He testified that he also notified his direct supervisor, CEO Mogzhan Hines, and the human resources director, Diandra Montano, at that time. Shortly after, his wife picked him up and took him home. He returned later that night and finished washing dishes "from a chair."

¶6          The next day, Wednesday, he delivered bottled water to the PAM building in his truck. He did not get out of his truck due to the pain and another employee unloaded the water. He testified that he told Hines he would be staying home to elevate his foot, except for returning that night to wash dishes.

¶7          On Thursday, PAM held a cookout. Merkley grilled hamburgers from a chair. But during the cookout, he told Hines he needed to leave early and go see a doctor. He did not work Friday or Saturday, and on Sunday, he went to the emergency room because he was "seeing signs" that hardware in his fused ankle "had failed." Merkley elected to undergo the below-the-knee amputation. He filed his workers' compensation claim on February 29.

¶8          PAM called four of Merkley's co-workers as witnesses. First was Lisa Thompson. She testified she never saw Merkley slip on the floor and denied that Merkley told her he was injured at work. She testified that Merkley left the kitchen to go "re-wrap" his foot, and later sent her a text that he went home because his sutures had broken open. Though Thompson admitted there was a dividing door and a dishwasher between her and Merkley that would have blocked her view of him had the door been closed, she testified the door was open the entire time.

¶9          Mozghan Hines testified next. She stated Merkley always wore the CAM boot and would sometimes complain about foot pain. Hines testified that, at the cookout, she had asked Merkley why he was grilling from a chair, and he responded that the foot pain was "an old problem" that he had been dealing with for "a long time." She testified he did not report a work injury to her until he sent an email on February 29, 2024, more

3

than two weeks after the claimed date of injury and after the surgical amputation.

**¶10** Diandra Montano, the human resources director, testified that Merkley first told her he had a work-related injury on February 28, 2024, while they were discussing FMLA benefits after his surgery. And Stephen Fletcher, the employee who unloaded the water bottles from Merkley's truck, testified that Merkley did not mention a work injury at that time.

**¶11** Finally, Merkley and PAM each called a medical expert. Merkley called Dr. Lawrence Kelly, M.D., the orthopedic surgeon who performed his amputation. Dr. Kelly confirmed that the hardware in Merkley's ankle was failing and attributed it to Merkley's alleged work injury. But he admitted that other possible causes, such as chronic infection or eventual hardware breakdown, could also have explained the ankle failure.

**¶12** PAM called orthopedic surgeon Dr. John Nassar, M.D., who performed an independent medical examination of Merkley. He concluded that, given the "smoldering" infection in Merkley's right foot and ankle, the amputation was inevitable and could not conclusively be attributed to work-related trauma.

**¶13** The ALJ found Merkley not credible and adopted Dr. Nassar's opinion as more probably correct. She thus found Merkley's claim non-compensable. She affirmed that conclusion after Merkley requested reconsideration.

**¶14** Merkley then brought this petition for special action review. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(B) and 23-951(A).

## DISCUSSION

**¶15** We view the evidence in the light most favorable to upholding the award. *Munoz v. Indus. Comm'n*, 234 Ariz. 145, 147, ¶ 2 (App. 2014). The injured employee bears the burden of establishing each element of a claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977).

**¶16** Merkley needed to show that he suffered a work-related injury that caused or contributed to the amputation. *Nelson v. Indus. Comm'n*, 24 Ariz. App. 94, 96 (1975) (if a work-related accident aggravates a preexisting condition, the resulting condition is compensable). The sole basis he presented for his claim was the credibility of his account of what

happened when he was washing dishes in the kitchen on Tuesday, February 13, 2024. The ALJ had the sole authority to assess the credibility of that account. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984) (ALJ is the sole judge of witness credibility). She did not find it credible and thus concluded no compensable injury occurred.

¶17 In his briefing on appeal, Merkley contends that the evidence he presented was sufficient to prove his case. This argument assumes the court of appeals will re-weigh the evidence, which we will not do. *Wal-Mart v. Indus. Comm'n*, 183 Ariz. 145, 146–47 (App. 1995). Rather, we affirm the ALJ's resolution of conflicting evidence if it is substantiated by competent evidence. *Preuss v. Indus. Comm'n*, 15 Ariz. App. 515, 516–17 (1971).

¶18 Testimony from Merkley's co-workers did not corroborate his claims at best and contradicted them at worst. On that basis, the ALJ was also free to disregard Dr. Kelly's opinion. *See Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982) (an ALJ may disregard a medical opinion which depends on an incorrect factual background). We will not disturb the ALJ's resolution of that conflicting evidence on appeal.

**CONCLUSION**

¶19 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR