631 P.2d 124

**FIDELITY & GUARANTY INSURANCE COMPANY, Petitioner Insurance Carrier,**

**Smitty's Super Valu, Inc., Petitioner Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Patricia A. May, Respondent Employee.**

**No. 1 CA–IC 2418.**

Court of Appeals of Arizona, Division 1, Department C.

May 5, 1981.

Rehearing Denied June 28, 1981.

Review Denied July 7, 1981.

Moore, Jennings, Kepner, Scheffing & Hart by Craig R. Kepner, Jack R. Cunningham, Phoenix, for petitioner Ins. Carrier and petitioner employer.

Calvin Harris, Chief Counsel, Phoenix, The Industrial Commission of Arizona, for respondent.

Gorey & Delaney by Edgar M. Delaney, Phoenix, for respondent employee.

## OPINION

FROEB, Judge.

This special action review of an Industrial Commission award raises two issues: whether the respondent employee timely requested a hearing on the petitioner carrier's notice of claim status denying her petition to reopen and whether the rules of res judicata precluded the respondent from reopening her claim. The administrative law judge determined that the hearing request was timely filed and that the evidence established a previously undiscovered condition that entitled the respondent to reopen her claim. For the reasons given below, we affirm the award.

In an industrial accident on June 15, 1976, the respondent lacerated her left wrist when an ice machine vent cover fell on it. The petitioner carrier accepted her claim for workmen's compensation benefits.

The respondent underwent protracted medical treatment for her injury. The laceration was cleaned, sutured, and dressed at a hospital emergency room. Following this treatment, she complained of numbness in the fourth and fifth fingers of her left hand and in her arm, and of pain in her left arm, shoulder, and neck. When these complaints persisted after the wound had healed and the sutures were removed, she consulted several different specialists and underwent exploratory surgery. She also had a rib removed.

Her complaints continued, however, and at the carrier's request the respondent saw Eugene J. Chandler, M.D. In June 1978, based on Dr. Chandler's report, the carrier issued a notice of claim status terminating benefits without permanent impairment. The respondent, who was represented by an attorney, timely requested a hearing on the merits of this notice. Hearings were held on October 17, 1978 and on November 27, 1978. In the hearings which ensued, the most relevant testimony was provided by Drs. Wetherell and Chandler. Dr. Wetherell opined that the respondent's condition was stationary, and on the basis of her credible subjective complaints of pain, he rated a ten to fifteen percent permanent impairment of the left arm. Dr. Chandler agreed that she was stationary, but he disagreed that she was permanently impaired, and felt that she should be released for regular work.

On December 20, 1978, the administrative law judge issued his award. He resolved the conflict in the medical evidence in favor of Dr. Wetherell's opinion and determined that the respondent's condition was stationary with a twelve percent permanent disability of the left arm. The respondent and the carrier elected not to request review of this award, which became final.

Contemporaneously with these Commission proceedings, the respondent continued to seek medical attention. In the afternoon following the first scheduled hearing on October 17, 1978, she consulted Thomas Henry Taber, Jr., M.D. She again complained of numbness and pain in her left fingers, arm, and shoulder, and, in addition, of an inability to release the grip of her left hand when she held an object. Dr. Taber's physical examination revealed considerable tenderness in the area of the scapula on the left. On October 17, 1978, he authored a report, which stated in relevant part:

COMMENTS: It is my opinion that this patient continues to have complaints referable to her left shoulder area which are attributable to the initial injury and the process of sprain of her left shoulder. It is my opinion that she probably sustained a sprain of the scapulothoracic shoulder girdle area as a result of the original injury that lacerated her arm. She has had considerable ... treatment since that time but has not been relieved of her symptoms.

On evaluation today the patient shows symptoms that are quite well attributable to the suprascapular area and strongly suggests the diagnosis of a scapulothoracic syndrome. It is my opinion that the patient would benefit by further orthopedic councelling [sic] and evaluation. Some further conservative efforts should result in improvement of the patient's left shoulder and arm complaints. She does require further orthopedic evaluation in my opinion.

It is my further opinion however that this patient is not totally disabled for work at this time and certainly can be at a work status. She certainly could be at light to moderate activity levels. Heavy lifting and overhead work will certainly cause her some difficulty. These should be accommodated as is practical.

In summary then it is my opinion that the patient shows the suggestions of a scapulothoracic syndrome on the left which does require further care. In addition in my opinion she is able to be gainfully employed.

The respondent returned to Dr. Taber for conservative medical treatment on November 28, 1978, the day after the second scheduled hearing. She periodically returned to receive treatment until June 1979.

On June 21, 1979, the respondent filed a petition to reopen. Industrial Commission Rule 133(a) (A.C.R.R. R4-13-133(A)) requires the petition to be filed using forms prescribed by the Commission. This Industrial Commission form does not require identification of counsel and is required to be signed by the claimant. Respondent used the required form and did not indicate whether her attorney continued to represent her. The record indicates he had never withdrawn as her authorized representative.

On July 3, 1979, Dr. Taber authored a report, which stated in relevant part:

It is my opinion that the patient has a scapulothoracic syndrome which is related to the original injury sustained in June of 1976. It is my opinion at this time that the patient has evidence of new and additional disability related to that injury. Her symptoms are felt to be a direct result of that injury and the concurrent surgery and other treatment that has been rendered in an attempt to relieve her from the effects of the June, 1976 injury.

It is my opinion that the patient does require additional conservative care and may even come to surgical considerations as far as her left scapula is concerned relative to the future. She remains under conservative care at this time.

On July 31, 1979, the carrier issued a notice of claim status denying the petition to reopen. It served the respondent by mailing the notice to her at the address appearing on the petition, but failed to serve her counsel. The respondent never received the notice and failed to request a hearing within sixty days after the carrier mailed the notice to her. In October 1979, her counsel discovered that the notice had been issued and promptly requested a hearing on the merits of it.

At the scheduled hearing on March 27, 1980, the respondent and Dr. Taber appeared. In addition, a March 6, 1980, medical report by Dr. Chandler was admitted into evidence. The respondent testified that on her own initiative and expense she consulted Dr. Taber as soon as his schedule permitted. Her testimony is unclear as to whether or not she informed her attorney of the results of the October 17, 1978, appointment at that time. She further testified that approximately in April 1979 she consulted her attorney about reopening her claim because her pain was worse. Her attorney sent her the form petition, she completed it and returned it to him, and he filed it.

Dr. Taber testified in conformity with his medical reports. In his opinion, although Dr. Wetherell's diagnosis of a thoracic outlet syndrome was similar to his diagnosis of a scapulothoracic outlet syndrome, his specific diagnosis had never been made before his report of October 17, 1978. He characterized the October 1978 diagnosis as reasonably presumptive, but not completely definitive. On the other hand, he characterized the July 1979 diagnosis, which was definitive, as merely confirming the diagnosis he had reached by the time of the respondent's first or second visit. He further testified that he informed her of the option of surgery on her first visit, but that he did not consider her a candidate for surgery until her third visit in December 1979, when it was apparent that conservative treatment was not relieving her symptoms. He also testified that from the time of the initial visit he considered her to require active medical treatment. Finally, on cross-examination, he admitted that her condition, his diagnosis of it, and his opinion that she was able to work had remained essentially unchanged from October 1978 to the present.

Dr. Chandler's report directly contradicted Dr. Taber's testimony and reports. Dr. Chandler opined that the respondent was medically stationary, unimpaired, and capable of regular work.

On April 28, 1980, the administrative law judge issued his award. The decisive findings were as follows:

3. Service of a Notice of Claim Status on an applicant and not on an applicant's attorney, when the applicant has an attorney of record, does not constitute valid service .... This Hearing Officer specifically finds that the applicant was represented by counsel and that counsel was not served by the defendant insurance carrier with a Notice of Claim Status. Therefore, the Request for Hearing submitted by the applicant through her attorney on October 24, 1979 was timely.

  . . . .

6. Dr. Taber diagnosed a scapular outlet syndrome. At the 1980 hearing, Dr. Taber testified that this diagnosis had not been made by anyone else involved in the case, although it was his opinion that they should have suggested it.

7. A party wishing to subpoena an expert medical witness must file a request at least 20 days before the date of the first scheduled hearing, *Rule* 41, *R. Proc. I. C. A.* (ACRR R4–13–141).

8. It was not possible, pursuant to *Rule* 41, to subpoena Dr. Taber for the hearings in 1978 . . . .

The administrative law judge then resolved the conflict in the medical evidence in favor of Dr. Taber's opinion that the respondent had a new and additional disability causally related to her industrial injury.

■ The first issue raised in this special action is whether the respondent's request for hearing should have been dismissed because it was untimely filed. A request for hearing is required to be filed within sixty days after the carrier sends a notice of its determination. A.R.S. § 23–947. It is undisputed in this case that the request for hearing was filed more than sixty days after the carrier sent notice to the respondent. Industrial Commission rules, however, require the carrier to serve its notice upon both the interested party and his authorized representative. Industrial Commission Rule 58(A) (A.C.R.R. R4–13–158(A)). The sixty day protest period begins to run only when both the interested

party and his authorized representative have been served. *See MRF Construction Co. v. Industrial Commission*, 111 Ariz. 466, 532 P.2d 528 (1975); *Sill v. Industrial Commission*, 12 Ariz.App. 6, 467 P.2d 81 (1970).

The petitioners argue that the rules requiring service on the authorized representative are inapplicable to a notice denying a petition to reopen unless the claimant's representative, at the time the claim was closed, filed a new authorization or the carrier was otherwise informed of the representation in the reopening proceeding. They cite no authority for this proposition and *Garcia v. Industrial Commission*, 20 Ariz.App. 261, 512 P.2d 24 (1973) is to the contrary. In that case, the claimant, who was represented by counsel, successfully reopened his claim. After the reopened claim was closed, the claimant filed a second petition to reopen. The carrier denied this petition and served its notice upon the claimant and his last authorized representative, the attorney who represented him in the first reopening. The claimant had actually retained other counsel, who had not filed the required authorization. The court, in assuming that Industrial Commission Rule 58 (A.C.R.R. R4–13–158) applied to the notice denying the petition to reopen, held that the carrier complied with the rule by serving the last attorney of record at the time it issued its notice.

In the case at bar, it is undisputed that respondent's attorney represented the respondent when her claim was closed and had not withdrawn as counsel of record. Consequently, to comply with rule 58(A), the carrier was required to serve respondent's attorney as well as the respondent. Because the carrier failed to serve the attorney of record and a hearing was required within sixty days of the attorney's discovery that the notice had issued, the administrative law judge correctly concluded that this request was timely filed.

The petitioners' second contention is that the rules of res judicata precluded the respondent from reopening her claim upon the basis of Dr. Taber's opinion that she required active medical treatment for a sca-

pulothoracic outlet syndrome. The respondent accepts the basic rule of res judicata that a final award is conclusive as to all facts actually litigated and as to all facts that could have been litigated at that time, *e. g., Magma Copper Co. v. Industrial Commission*, 115 Ariz. 551, 566 P.2d 699 (App. 1977), but denies that this basic rule is applicable to this case.

We hold that the administrative law judge correctly allowed reopening on the basis of Dr. Taber's opinion that respondent had sustained a sprain of the scapulothoracic shoulder girdle as a result of the industrial accident. There is no question on appeal as to whether this condition is new, additional, or previously undiscovered with relation to the findings underlying the closing of the claim by the award of December 20, 1978. The precise issue raised by petitioner is whether respondent knew or should have known of the condition at a time when it could have been presented before the award became final.

The resolution of this issue turns upon the difference between what respondent was entitled to assert procedurally before the Commission contrasted with what might have been allowed by reason of the exercise of discretion by the administrative law judge. In order to assure the presence of a medical witness for testimony, a party desiring the issuance of a subpoena must make the request for a subpoena in writing to the administrative law judge at least twenty days prior to the date upon which the first hearing is scheduled. Industrial Commission Rule 41 (A.C.R.R. R4–13–141). While a party may under certain circumstances present the testimony of a witness without compelling his attendance by subpoena, he may be justifiably thwarted from presenting the testimony if he does not resort to the use of a subpoena. For discussion, see *E. S. Kelton Contracting Co. v. Industrial Commission*, 123 Ariz. 485, 600 P.2d 1117 (App.1979). A correlative of this problem is the adequacy of notice afforded to the adverse party. We hold, therefore, that in determining whether the facts of a medical condition and the medical witness'

opinion concerning them could have been presented and adjudicated at the initial hearing, the test is whether the claimant knew or should have known of the evidence in time to request a subpoena in compliance with rule 41. If the claimant cannot do so, principles of res judicata will not prevent reopening thereafter.

Applying this to the present case, the diagnosis made by Dr. Taber, upon which respondent relies in her petition to reopen, was first presented in his letter-report dated October 19, 1978. The first scheduled hearing relating to the award of December 20, 1978, was on October 17, 1978, the same day as Dr. Taber's report. We hold, therefore, that the principle of res judicata does not require denial of the petition to reopen.

It is suggested by petitioners that respondent could have sought to introduce Dr. Taber's diagnosis into the proceedings any time until the closing of the initial award. It is true that an administrative law judge may exercise considerable discretion concerning witnesses, testimony, and hearing continuances. For example, Industrial Commission Rule 56 (A.C.R.R. R4–13–156) provides for continuance of a hearing based upon the exercise of discretion. Nevertheless, a claimant cannot insist upon the exercise of discretion in his favor and, because he cannot, the principle of res judicata may not be invoked against him as a ground for denial of his petition to reopen.

For the reasons stated, the award granting reopening is affirmed.

O'CONNOR, P. J., and WREN, J., concur.