750 P.2d 1377

**GENERAL TIRE COMPANY,**
Petitioner Employer,

**Liberty Mutual Fire Insurance
Company, Petitioner Carrier,**

v.

The **INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Elizabeth Herriott,**
Respondent Employee.

**No. 1 CA-IC 3671.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 18, 1988.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Lawrence H. Lieberman, Larry L. Smith, Phoenix, for petitioner Employer & Carrier.

Dennis P. Kavanaugh, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Jerome, Gibson & Stewart, P.C. by James L. Stevenson, Phoenix, for respondent Employee.

**OPINION**

CONTRERAS, Judge.

In this special action review of an Industrial Commission (Commission) award, we are asked to decide whether the Commission must directly notify the carrier's attorney, who represented the carrier when a claim was reopened, of hearings related to

the subsequent reclosing of the claim. We conclude that such notice is required. Since such notice was not given, we set aside the award.

In April 1977, the respondent employee (claimant) personally filed a gradual injury workers' compensation claim for pain and swelling in the right forearm and wrist. The petitioner carrier (Liberty Mutual) accepted compensability, routinely processed the claim, and subsequently closed it in September 1981 with a 10% permanent impairment and a scheduled disability. This closure was uncontested.

In October 1984, the claimant petitioned to reopen the claim. This petition was signed by claimant's retained counsel and supported by a medical report by Leonard S. Bodell, M.D., who recommended for diagnosis and perhaps ultimately for therapy purposes putting claimant on a "work simulator" to test her endurance and strength. In November 1984, Liberty Mutual denied reopening by notice of claim status. The claimant, through her attorney, protested this denial by filing a request for hearing. The Commission, by form letter, acknowledged the protest and notified Liberty Mutual that the matter would be referred for hearing unless it notified the Commission within 15 days of efforts to resolve the dispute without a hearing. In February 1985, the matter was referred to an administrative law judge, who scheduled a hearing. Notice of this hearing was mailed to the claimant, her attorney, the employer, and Liberty Mutual.

On March 28, 1985, present counsel for Liberty Mutual sent a letter to the administrative law judge to whom the matter was referred advising him of his retention for the purpose of representation. We set forth the text of this letter:

March 28, 1985

Honorable James A. Overholt
Presiding Administrative Law Judge
Industrial Commission of Arizona
800 West Washington Street
Phoenix, AZ 85007
Re: Elizabeth Herriott v. General Tire
  ICA Claim Number: 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
  Carrier Claim Number: C609-6970
  Date of Injury: 4/25/77

Dear Judge Overholt:

Please be advised that the undersigned and this law firm have been retained by the defendant insurance carrier to represent its interests in the above-captioned case.

Please mark your records accordingly and provide the undersigned with copies of all correspondence, awards, etc.

Thank you very much for your cooperation.

Very truly yours,

LAWRENCE H. LIEBERMAN
For the Firm

LHL:ed
cc: D.A. JEROME, ESQ.
    Mr. Jeff Cowie, Liberty Mutual

The Commission subsequently mailed a copy of the original hearing notice to Liberty Mutual's attorney and also notified both Liberty Mutual and its attorney of a change in the hearing date. In preparation for hearing, the claimant's attorney sent a copy of a subpoena request directly to Liberty Mutual's attorney, not to Liberty Mutual itself.

Both parties were represented by their respective attorneys at the scheduled hearings. The administrative law judge ultimately granted reopening "for a one time therapeutic work simulator program not to exceed six weeks in duration as recommended by Dr. Bodell." The record indicates that copies of the award granting reopening were mailed to claimant, claimant's attorney, the employer, Liberty Mutual, and Liberty Mutual's attorney.

On July 11, 1985, the attorney for Liberty Mutual sent claimant's attorney a letter stating that: "Pursuant to the Award of June 26, 1985, my client, Liberty Mutual, authorizes six weeks of treatment with Dr. Bodell. By copy of this letter I am advising Dr. Bodell's office to submit their bills directly to Liberty Mutual for this treatment, referenced claim number C609-6970." Counsel's letter of July 11, 1985, indicated that copies were also sent to Dr. Bodell, the administrative law judge to

whom the matter had been assigned, and Liberty Mutual.

The therapy was unsuccessful. In December 1985, Liberty Mutual reclosed the claim. The claimant on March 10, 1986, through her attorney, filed a request for hearing asserting, among other things, that she had a permanent impairment greater than indicated and was "entitled to continuing supportive care as awarded." The record indicates that a copy of the request for hearing was sent to Liberty Mutual. There is no indication that claimant's attorney sent a copy to Liberty Mutual's attorney.

The Commission, on April 9, 1986, processed the request for hearing by sending a written form acknowledgement of the request to the claimant, her attorney, the employer, and Liberty Mutual. A form acknowledgement was not sent to Liberty Mutual's attorney. The Commission subsequently referred the matter to the same administrative law judge for hearing. In June 1986, the administrative law judge scheduled a hearing for August 5, 1986. This hearing notice was sent to the claimant, her attorney, the employer, and Liberty Mutual. A hearing notice was not sent to Liberty Mutual's attorney.

The claimant's attorney proceeded with discovery. He served written interrogatories directly on Liberty Mutual. In addition, he sent copies of document submissions and subpoena requests directly to Liberty Mutual. There is no indication in the record that Liberty Mutual's attorney was sent a copy of the interrogatories or copies of the document submissions or subpoena requests. The written interrogatories went unanswered.

The first hearing convened as scheduled. The claimant and her attorney were present. Liberty Mutual was unrepresented. The hearing began with the following exchange:

THE JUDGE: Reviewing the Commission's file, the defendant carrier was served with a Notice of Hearing as required by law, although there's been no notice of appearance by any counsel representing the carrier.

Mr. Stevenson, have you had any contact with this carrier involving this claim?

MR. STEVENSON: Judge, I have not had any kind of contact at all and I haven't received any answers to Interrogatories that were propounded.

THE JUDGE: You served Interrogatories on the defendant carrier?

MR. STEVENSON: That's correct, and we didn't receive any sort of response at all and, in fact, I got none of the normal inquiries with regard to settlement and that type of thing.

THE JUDGE: Well, in reviewing the file there were several letters, in addition to the Notice of Hearing and applicant's Interrogatories the carrier received the standard letter, a copy of the letter to the applicant's attorney indicating that a Request for Hearing had been filed and that's dated April 9, 1986. There's also copies to the applicant, General Tire Company and Liberty Mutual, so I simply have no explanation why the carrier doesn't have counsel here.

As far as I'm concerned that's their responsibility, they were served with a notice and if they choose not to appear that's their business, so we'll proceed without them.

The administrative law judge then proceeded to hear the claimant's testimony.

A continued hearing was necessary in order to take the testimony of Dr. Bodell. On August 7, 1986, the administrative law judge scheduled the continued hearing for September 4, 1986. This hearing notice was sent to the claimant, her attorney, the employer, and Liberty Mutual. Again, a notice of hearing was not sent to Liberty Mutual's attorney.

The continued hearing also convened as scheduled. The claimant and her attorney were again present. Liberty Mutual was again unrepresented. This hearing began as follows:

THE JUDGE: As I previously indicated in the transcript of August 5th, 1986, no one has made an appearance on behalf of the carrier.

Well, the carrier was again served with notice of the time and place of this hearing on August 7th, 1986, and again, no one has entered an appearance on behalf of the carrier or employer.

As I previously noted, it is their responsibility, and I simply have no explanation why nobody is here.

Mr. Stevenson, have you had any further contact with the insurance company?

MR. STEVENSON: No, we have had no communication with them at all.

At this point, all of our discovery is completed. We sent transcripts, and we have not had any kind of communication with them since the last hearing.

THE JUDGE: Well, as far as I'm concerned, they have been properly served with a notice of both hearings, and their failure to appear is a waiver of their right to participate in these proceedings. We are going to have to, by necessity, proceed without them.

Dr. Bodell was then called and testified that the rateable impairment was the same as when the claim was previously closed, but that in his opinion the AMA Guides inadequately measured the impairment. He also testified that the claimant was unable to return to her pre-injury employment.

The administrative law judge, on September 5, 1986, issued the award. Regarding Liberty Mutual's failure to appear, he found:

1. The defendants were duly notified of the time and place for hearing as required by law. However, the defendants made no appearance at either hearing. The law is well established that any party aggrieved by an award or notice shall be granted the right to a formal hearing at which he shall be afforded an opportunity to present further material evidence and cross-examine any person who has given any evidence in the matter. (Citations omitted.) However, the right to formal hearing to present evidence and cross-examine witnesses in a proceeding before the Commission must be distinguished from the opportunity to the extent that although the right can be waived by a party, the opportunity cannot be restricted or denied. (Citations omitted.)

2. In this case the defendants have been given a full opportunity to exercise their right to participate in formal hearings and present evidence and/or cross-examine witnesses; their failure to appear for the hearing constitutes a waiver of their right to any further formal proceedings herein.

(9/5/86 Award, findings 1, 2.) Applying *Gomez* and *Dutra*[1] to Dr. Bodell's expressed opinion, the administrative law judge then concluded that the claimant had an additional 40% permanent impairment and awarded claimant additional scheduled permanent partial disability compensation. Copies of the award were sent to claimant, claimant's attorney, the employer, and Liberty Mutual. A copy of the award was not sent to Liberty Mutual's attorney.

Liberty Mutual, through the same attorney who had originally advised the Industrial Commission in writing of his representation of Liberty Mutual's interest in this case and had asked that he be provided "with copies of all correspondence, awards, etc.," requested administrative review. The stated basis for the request for review was:

This Request for review is based on the fact that the attorney of record for the Defendants was not served notice of the hearing in this case and only received the Award indirectly on October 3, 1986. Defendants have been denied proper notice of the hearing in this case and for that reason did not appear nor present a defense. Defendants had no intention of permitting the case to be submitted based upon evidence presented by Applicant only.

For the foregoing reasons Defendants respectfully request tha (sic) the Administrative Law Judge rescind the Award

---

1. *Gomez v. Industrial Comm'n,* 148 Ariz. 565, 716 P.2d 22 (1986); *Dutra v. Industrial Comm'n,* 135 Ariz. 59, 659 P.2d 18 (1983). A recent statutory amendment negates *Dutra* but does provide an increased rate of scheduled benefits if the injury disables the worker from returning to his former occupation. *See* A.R.S. § 23–1044(B)(21) (effective October 21, 1987).

previously entered on September 5, 1986 and set the case up for further hearing so that Defendants will have the opportunity to appear and present a defense.

The administrative law judge summarily affirmed the award. This special action followed.

On review, Liberty Mutual argues that the Commission was required to send notice of the hearings scheduled in this case to the attorney who was on record as having previously been retained to represent its interests in this case. It relies on statutes, an administrative procedural rule, and caselaw. We address these authorities in turn.

Liberty Mutual first relies on the statutory notice provision and the statutory definition of interested party. The Commission must provide timely written notice of hearings "to all parties in interest." A.R.S. § 23–941(D). "Interested party" is defined to mean "the employer, the employee ... the commission, the insurance carrier or their representative." A.R.S. § 23–901(9).

■ We disagree that this authority per se required the Commission to notify Liberty Mutual's attorney directly. The definition of interested party is *disjunctive.* The notice statute incorporating this definition therefore is disjunctive as well. Accordingly, notice to a carrier *or* its representative satisfies section 23–941(D).

Liberty Mutual next relies on an administrative procedural rule requiring service of any notice "upon an interested party and his authorized representative." A.C.R.R. R4–13–158(A) (Rule 158). Rule 158 is self-evidently conjunctive. The only dispute, therefore, is whether this rule applies to hearing notices and to Liberty Mutual's attorney.

■ Statutes have priority over administrative rules. *See, e.g., Black v. Industrial Comm'n,* 149 Ariz. 81, 716 P.2d 1018 (App. 1985). In *Black,* this court concluded that the 1980 amendment to A.R.S. § 23–947 conflicted with Rule 158. 149 Ariz. at 84, 716 P.2d at 1021. This amendment strictly limited the excuses for late hearing requests. *See* Laws 1980, Ch. 246, § 25. In *Black,* therefore, the conflict with Rule 158 did not arise out of the applicable notice

statute itself, which merely required the carrier to mail the notice of claim status to the employee. It is well established that Rule 158 is compatible with this notice provision. *See MRF Construction Co. v. Industrial Comm'n,* 111 Ariz. 466, 532 P.2d 528 (1975). As previously noted, notice to the interested party alone satisfies A.R.S. § 23–941(D). Rule 158 supplements rather than conflicts with the statute by requiring notice both to the interested party and "his authorized representative."

■ As for the applicability of Rule 158 to Liberty Mutual's attorney, it is clear from the record that Liberty Mutual's attorney did file with the Commission a letter advising the Commission of his representation of Liberty Mutual's interest and request that he be provided with "copies of all correspondence awards, etc." This letter was filed on March 28, 1985, which was after a hearing had been scheduled on the disputed reopening. An administrative rule of procedure defines "authorized representative" for workmens' compensation hearings as "only those persons permitted by law, including attorneys, who are authorized by a written instrument of authorization filed with the Commission, to act for and in behalf of a party." A.C.R.R. R4–13–105(1) (Rule 105(1)). It is therefore clear that Liberty Mutual's attorney was an authorized representative at that stage of the claim. *See id.* Rule 158 and the applicable definition, however, do not determine whether such an authorization of representation continues through each subsequent stage of the claim. This court, however, has concluded that authorizations of representation for claimants' attorneys continue absent a formal withdrawal. *See Fidelity & Guaranty Ins. Co. v. Industrial Comm'n,* 129 Ariz. 342, 346, 631 P.2d 124, 128 (App.1981). Liberty Mutual argues that a different rule does not apply to lawyers representing insurance carriers from that effective for those appearing on behalf of claimants. Stated in a more positive manner, it argues that what procedurally serves the claimant should also serve the insurance carrier. At oral argument this approach was phrased more colorfully: "what's good for the goose is good for the gander."

The claimant argues that it cannot "be assumed that an attorney of record for purposes of one issue may necessarily continue on in the role of representing the carrier when subsequent issues are litigated." Claimant attempts to support this argument on the basis that the workers' compensation system is unique since the question of the total benefits due the worker is litigated piecemeal with years often intervening. Claimant also suggests that since carriers are much more sophisticated than claimants and process their own files during this period, they can choose not to be represented as to a particular issue and, if they choose to be represented, they should affirmatively indicate such representation, issue by issue.

We find claimant's argument to be unpersuasive, both generally and in the specific context of the case before us. Generally, Rule 158 of the Industrial Commission's procedural rules (which we have found to be compatible with the notice requirements of A.R.S. § 23–941(D)) contains no limitations as to the length of time in which an "authorized representative" may represent an interested party. Nor is there any limitation in Rule 158 with respect to the extent of representation by an authorized representative. In addition, there is no distinction or qualification made between representation of a claimant or an insurance carrier. The term used in Rule 158 is "interested party." In the absence of any limitation or qualification by statute or administrative rule, it would appear that such representation would continue on behalf of an interested party, including insurance carriers, until such written authorization is either withdrawn, cancelled, or an appropriate substitution of an authorized representative is made. *Fidelity & Guaranty Ins. Co. v. Industrial Comm'n, supra; Garcia v. Industrial Commission*, 20 Ariz.App. 261, 512 P.2d 24 (App.1973).

Specifically, it is clear from the record that pursuant to Rule 105(1) Lawrence Lieberman and his firm became Liberty Mutual's authorized representative on March 28, 1985, when the letter designating Lieberman and his firm as retained counsel representing Liberty Mutual in this matter was sent to the Commission. The letter is one of general representation and contains no limitations with regard to time, purpose, or type of representation. It is likewise clear that the Commission correctly followed Rule 158(1) when it sent Liberty Mutual and its attorney notice of the hearing on claimant's petition to reopen. It is similarly clear that notice of hearing was not sent to Liberty Mutual's attorney following claimant's request for hearing after the claim was reclosed following the unsuccessful therapy. It is undisputed that during this relatively short interim period there was no written withdrawal, cancellation, or substitution of representation by Liberty Mutual's attorney as its "authorized representative." Under these specific circumstances and pursuant to Rule 158 it was necessary to serve Liberty Mutual's attorney with notice of hearing. In the clear absence of such service upon Liberty Mutual's attorney, we conclude that Liberty Mutual has not been given a full opportunity to exercise its right to participate in formal hearings and present evidence.

The award is set aside.

GREER and FIDEL, JJ., concur.